U.S. Department of Justice

Civil Rights Division

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

*Criminal Section - PHB*
*950 Pennsylvania Ave, NW*
*Washington DC 20530*

USA v. WALTER SCOTT STEELE, plea agreement

March 27, 2013

Gary Proctor
8 East Mulberry
Baltimore, MD 21202

Re:   United States v. James Kalbflesh, et al., 13-cr-083

Dear Mr. Proctor:

This letter, together with the Sealed Supplement, confirms the plea agreement that has been offered to WALTER SCOTT STEELE ("Defendant") by the Civil Rights Division of the Department of Justice ("United States"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by noon on April 1, 2013, it will be deemed void. The terms of the agreement are as follows:

## Offenses of Conviction

A.   The Defendant agrees to plead guilty to Count Three of the Indictment, which charges him with a violation of 18 U.S.C. § 371 (Conspiracy); and Count Seven of the Indictment, which charges him with a violation of 18 U.S.C. § 1001 (False Statement). The Defendant admits that he is, in fact, guilty of these two offenses and will so advise the Court.

## Elements of the Offenses

B.   The elements of the two offenses to which the Defendant has agreed to plead guilty, and which the United States would prove if the case went to trial, are as follows:

Count One: 18 U.S.C. § 371

1.   That two or more persons combined, conspired, and agreed in the District of Maryland to commit offenses against the United States, specifically, the offenses of 18 U.S.C. §§ 1001 and 1512, as charged in the Indictment in United States v. James Kalbflesh, 13-cr-083;

2.   That WALTER SCOTT STEELE willfully joined that agreement;

3.   That WALTER SCOTT STEELE joined the agreement or conspiracy knowing of its objective: (a) to knowingly engage in misleading conduct toward another person with intent to hinder, delay, and prevent the communication of truthful information to a federal

1

law enforcement officer and judge of information relating to the commission and possible commission of a federal offense, in violation of Title 18, United States Code, Section 1512(b)(3); and (b) to knowingly and willfully make materially false statements and representations in a matter within the jurisdiction of the FBI, in violation of Title 18, United States Code, Section 1001; and

    4. That at some time during the existence of the agreement or conspiracy, at least one of its members performed an overt act listed in the Indictment in order to further the objectives of the agreement.

Count Two: 18 U.S.C. § 1001

    1. That WALTER SCOTT STEELE made a false statement to a government agent, or concealed a fact from a government agent;

    2. That the statement or representation by WALTER SCOTT STEELE was material;

    3. That WALTER SCOTT STEELE made the false statement knowingly and willfully; and

    4. That the statement or representation by WALTER SCOTT STEELE was made in a matter within the jurisdiction of the executive branch of the United States.

Penalties

    C. ·The maximum sentence provided by statute for <u>each</u> of the two offenses to which the Defendant is pleading guilty is as follows: Imprisonment up to five (5) years, in addition to a maximum term of three (3) years supervised release, and a maximum fine of $250,000. In addition, for <u>each</u> offense, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release.

    D. If the Defendant is sentenced to a term of imprisonment, the parties respectfully request that the Court recommend that the Bureau of Prisons consider that the instant offense arose out of the Defendant's employment as a correctional officer and that the victim of the

---

[1]  Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

offense was an inmate. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant would serve any term of imprisonment imposed.

### Waiver of Rights

E. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

1. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, the United States, and the Court all agreed.

2. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

3. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

4. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

5. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

6. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

7. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

8. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

F. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

G. The United States and the Defendant understand, agree and stipulate to the following calculation of the Advisory Guidelines:

Count 1: 18 U.S.C. § 371

1. U.S.S.G. § 2J1.2(c) provides that, in this case, application of section 2X3.1 is appropriate. Section 2X3.1 provides for application of section 2H1.1, which is the offense guideline for the underlying offense (18 U.S.C. § 242). Section 2H1.1 also provides that the base offense level should be the offense guideline applicable to the underlying offense. In this case, U.S.S.G. § 2A2.2, Aggravated Assault, is the appropriate offense guideline. The base offense level for U.S.S.G. § 2A2.2 is 14. The specific offense characteristics provide for a two (2) level enhancement because the assault "involved more than minimal planning," and a five (5) level enhancement because the victim sustained serious bodily injury. The base offense level for the underlying offense is twenty-one (21).

2. The specific offense characteristic of U.S.S.G. § 2H1.1 provides for a six (6) level enhancement because the offense was committed under color of law, for an offense level of twenty-seven (27).

3. Returning to section 2X3.1, the offense level is six (6) levels lower than the offense level for the underlying offense. The resulting offense level is twenty-one (21).

4. U.S.S.G. § 3A1.3 provides for a two (2) level enhancement because the victim was physically restrained in the course of the offense. This enhancement brings the offense level to twenty-three (23).

5. U.S.S.G. § 3C1.1 provides for a two (2) level enhancement because the defendant willfully obstructed, impeded, or attempted to obstruct or impede the investigations into the offense of conviction. This enhancement brings the total offense level to twenty-five (25).

Count 2: 18 U.S.C. § 1001

1. The guidelines calculation for Count 2 results in the same total offense level as set forth in Count 1. Both counts involve a cross-reference to 2X3.1 (Accessory after the fact).

2. Counts 1 and 2 are grouped, in accordance with U.S.S.G. § 3D1.1, comment n.2, because the societal interests that were harmed are closely related.

H. The United States and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto, which the United States would prove beyond a reasonable doubt.

I. The United States does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. The United States agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty as long as the Defendant continues to accept personal responsibility for his criminal conduct. The United States may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, the United States, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

J. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

Obligations of the United States

K. At the time of sentencing, the United States will recommend that the Court impose a guideline sentence.

L.    If, at the time of sentencing, the United States determines that defendant STEELE has fully complied with all of his obligations under his plea agreement and the Sealed Supplement, the United States agrees not to prosecute defendant STEELE for any crime arising from the facts that form the basis of this plea agreement, and to dismiss Count Six, the remaining count against him in the Indictment in *United States v. James Kalbflesh, et al.*, 13-cr-083.

M.    The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct. If, at that time, the United States has information concerning the Defendant's security during any period of incarceration, it will present that information to the Court.

## Waiver of Appeal

N.    In exchange for the concessions made by the United States and the Defendant in this plea agreement, the United States and the Defendant waive their rights to appeal as follows:

1.    The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

2.    The Defendant and the United States knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

3.    Nothing in this agreement shall be construed to prevent the Defendant or the United States from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

4.    The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from the United States or any investigating agency.

## Obstruction or Other Violations of Law

O.    The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then the United States will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, the United States will be free to argue sentencing guidelines

factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, the United States will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because the United States is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

P. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept the United States' recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

Q. This letter supersedes any prior understandings, promises, or conditions between the United States and the Defendant and, together with the Sealed Supplement and Attachment A, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and the United States other than those set forth in this letter, the Sealed Supplement, and Attachment A and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

ROD J. ROSENSTEIN
UNITED STATES ATTORNEY

THOMAS E. PEREZ
ASSISTANT ATTORNEY GENERAL
CIVIL RIGHTS DIVISION

By:

FORREST CHRISTIAN
Special Litigation Counsel
Civil Rights Division

By:

SANJAY PATEL
Trial Attorney
Civil Rights Division

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

4-4-13
Date

WALTER SCOTT STEELE

I am WALTER SCOTT STEELE'S attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

4-4-13
Date

GARY PROCTOR

## PLEA AGREEMENT

## ATTACHMENT A

## FACTUAL BASIS

The United States of America and the defendant stipulate and agree that the following facts are true, and that the United States could prove these facts beyond a reasonable doubt:

Defendant WALTER SCOTT STEELE combined, conspired, and agreed with other Roxbury Correctional Institution (RCI) officers to commit the following offenses against the United States: (1) to knowingly engage in misleading conduct toward another person with intent to hinder, delay, and prevent the communication of truthful information to a federal law enforcement officer and judge of information relating to the commission and possible commission of a federal offense, in violation of Title 18, United States Code, Section 1512(b)(3); and (2) to knowingly and willfully make materially false statements and representations in a matter within the jurisdiction of the FBI, in violation of Title 18, United States Code, Section 1001. Defendant STEELE admits that this conspiracy was in violation of Title 18, United States Code, Section 371.

Defendant STEELE knowingly and willfully made materially false statements and representations in a matter within the jurisdiction of the FBI, an agency of the Executive Branch of the United States, when he falsely told FBI agents investigating the assault of inmate KD: (1) that, on March 8-9, 2008, he never had heard RCI officers discuss assaulting inmate KD; and (2) that he never participated in any conversations where RCI officers discussed covering up information related to an assault on inmate KD. Defendant STEELE admits that these false statements were in violation of Title 18, United States Code, Section 1001.

In March of 2008, defendant STEELE was employed at RCI as a Correctional Officer. Defendant STEELE was assigned to the midnight shift, which started at 11 p.m. on March 8, 2008, and continued until 7 a.m. on March 9, 2008. On or about March 8, 2008, defendant STEELE found out at roll call that inmate KD had been moved to the Administrative Segregation Intake Area (ASIA) because inmate KD had assaulted an RCI officer during a previous shift.

Shortly after roll call, defendant STEELE went to ASIA. Among other officers, he saw JK, RR, and WK, in ASIA. JK and other RCI officers talked about assaulting inmate KD in retaliation for inmate KD's assault of another officer. After JK left the conversation, defendant STEELE warned the group that they would get caught if they assaulted the inmate.

Defendant STEELE then left the conversation and walked to another office in the medical unit, where defendant STEELE fell asleep. JK later knocked on the door and woke

defendant STEELE. JK asked: do you want some of this? Defendant STEELE followed JK out of the office.

Defendant STEELE saw JK, JM, LH, and Philip Mayo inside inmate KD's cell. RR stood at the cell door. Inmate KD was on the ground, and officers appeared to be assaulting the inmate, even though the inmate was not resisting in any way. Defendant STEELE saw JM repeatedly strike inmate KD. Troubled by what he had seen, defendant STEELE walked away.

Later, defendant STEELE heard that food trays were going to be delivered to Housing Unit 3. Defendant STEELE immediately left the medical unit in order to avoid being seen in or near ASIA with any of the officers who had assaulted KD.

Defendant STEELE returned to the midnight shift the following day, on March 9-10, 2008. Defendant STEELE reported to Washington County Hospital, where he was tasked with guarding inmate KD. Defendant STEELE saw that inmate KD had been "beat to hell and back." Inmate KD told defendant STEELE that he had been beaten because he had previously hit a correctional officer.

Defendant STEELE later learned that officers from the midnight shift were meeting at a McDonald's restaurant to talk about the assault on inmate KD. Defendant STEELE met at the McDonald's restaurant with several RCI officers, including ones who had been involved in the assault on inmate KD. Officers asked defendant STEELE about seeing inmate KD at the hospital. Officers acknowledged that inmate KD had been beaten, and that blood had been cleaned up in his cell.

At McDonald's, defendant STEELE and the officers discussed getting their stories together and what they were going to say to investigators. An officer told defendant STEELE: you were asleep, so you don't know nothing anyway. Defendant STEELE agreed to say that he had fallen asleep in an office in ASIA and that he did not know about an assault on inmate KD.

On or about March 12, 2008, defendant STEELE met with a state investigator and falsely denied witnessing an assault on inmate KD.

On or about November 25, 2008, defendant STEELE testified under oath in an administrative proceeding. During that testimony, defendant STEELE was asked if, on March 8-9, 2008, he had heard officers in ASIA talking about inmate KD. Defendant STEELE falsely said: No, not that I recall.

Defendant STEELE also falsely denied having seen any officers in the cell with inmate KD; falsely denied having discussed with anyone the assault on KD; and falsely denied ever having been invited to a meeting to discuss what had happened during the midnight shift on March 8-9, 2008.

On or about February 12, 2013, defendant STEELE participated in a voluntary interview with federal investigators. When asked about the midnight shift and the staff assault on inmate KD on March 8-9, 2008, defendant STEELE falsely stated that he did not recall any conversations regarding inmate KD. Defendant STEELE also falsely denied having had any subsequent conversations about KD. Finally, defendant STEELE omitted that he had seen JM, JK, LH, and Philip Mayo involved in an assault on inmate KD.

In truth, as defendant STEELE then well knew, he had participated in a conversation where RCI officers had discussed assaulting inmate KD, and, later, had met with RCI officers to discuss covering up their knowledge related to an assault on inmate KD. Defendant STEELE also had seen five RCI officers involved in an assault on inmate KD.

_____
WALTER SCOTT STEELE
Defendant

4-4-13
DATE